

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | I N F O R M A T I O N |
| ) | |
| Plaintiff, ) | |
| ) | 4:25 CR 0503 |
| v. ) | CASE NO. _____ |
| ) | Title 18, United States Code, |
| REYNALDO DIAZ, ) | Section 1349 |
| ) | |
| Defendant. ) | **JUDGE FLEMING** |

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Information, unless otherwise specified:

1. Defendant REYNALDO DIAZ was a resident of Belle Glade, Florida.

2. Co-conspirator Evan Light ("Light") (charged separately) was a resident of Lebanon, Indiana.

3. Company 1 provided an online investment platform allowing users to trade cryptocurrency in self-directed individual retirement accounts ("IRAs"). Company 1 was headquartered in Las Vegas, Nevada. Individuals who held Company 1 IRAs resided in jurisdictions throughout the United States, including the Northern District of Ohio.

4. The Cryptocurrency Exchange was an online platform for buying, selling, transferring, and storing cryptocurrency in interstate commerce. The Cryptocurrency Exchange operated as a remote-first company and had no physical headquarters. Individuals who had accounts on the Cryptocurrency Exchange resided in jurisdictions throughout the United States, including the Northern District of Ohio.

5. Victim 1 was a resident of the Northern District of Ohio, and held accounts with Company 1 and the Cryptocurrency Exchange.

6. Victim 2 was a resident of the Southern District of California, and held accounts with Company 1 and the Cryptocurrency Exchange.

## COUNT 1
### (Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The United States Attorney charges:

7. The factual allegations contained in paragraphs 1 through 6 of this Indictment are incorporated by reference as if stated fully herein.

### The Conspiracy and Scheme to Defraud

8. From in or around March 2021 through in or around November 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant REYNALDO DIAZ, Evan Light (charged separately), and others known and unknown to the United States Attorney, did knowingly and intentionally combine, conspire, confederate and agree to commit a federal fraud offense, that is: to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Objects and Purposes of the Conspiracy and Scheme

9. The objects and purposes of the conspiracy and scheme included, but were not limited to, the following: for the conspirators to unjustly enrich themselves and their designees

2

by (a) using a cyber intrusion to obtain access to Company 1's customer information and identify individuals with high-value cryptocurrency accounts on the Cryptocurrency Exchange; (b) using hacking and social engineering techniques to obtain access to targeted Company 1 customers' Cryptocurrency Exchange accounts; (c) diverting cryptocurrency from Cryptocurrency Exchange accounts to accounts and wallets the conspirators controlled; (d) diverting the proceeds for the conspirators' use and the use and benefit of others and to further the conspiracy and scheme; and (e) and concealing the conspiracy and scheme.

### Manner and Means of the Conspiracy and Scheme

10. It was part of the conspiracy and scheme that:

    a. Co-conspirator 1 exploited a vulnerability in Company 1's web application that allowed the conspirators to obtain approximately 386,000 lines of Company 1's code. Through this exploit the conspirators were able to identify personal identifying information ("PII") of thousands of Company 1's account holders, including an account holder's first name, last name, email address, phone number, and zip code associated with the affected accounts.

    b. Light and Co-conspirator 2 ran the email addresses obtained from the Company 1 intrusion through a program that enabled the conspirators to identify which Company 1 customers also maintained accounts with the Cryptocurrency Exchange (the "Targeted Victims").

    c. Light and Co-conspirator 2 used the information gained through the Company 1 intrusion to hack the Targeted Victims' email accounts to determine the approximate balance of the Targeted Victims' Cryptocurrency Exchange accounts.

    d. Conspirators sent password reset requests for the Targeted Victims' Cryptocurrency Exchange accounts from the Targeted Victims' hacked email addresses in order to gain access to that Targeted Victims' Cryptocurrency Exchange accounts. Conspirators also

used the password reset reply from the Cryptocurrency Exchange to determine the account's approximate balance, based on the waiting period for the password reset, as the Cryptocurrency Exchange imposed differing waiting periods for password resets depending on the balance in the account, with a longer waiting period for accounts with higher balances.

    e.  If the password reset option was disabled for a particular Targeted Victim, Defendant called the Targeted Victim, posing as a Cryptocurrency Exchange representative, and obtained sensitive account information over the phone directly from the Targeted Victim in order to gain access to the account holder's Cryptocurrency Exchange accounts.

    f.  Defendant used voice over internet protocol ("VOIP") phone numbers, purchased by Defendant and Light, to contact the Targeted Victims. Defendant and another co-conspirator altered the caller ID information on the VOIP accounts to make it appear as though Defendant was calling from a phone number known to belong to the Cryptocurrency Exchange, rather than from that actual VOIP number. When speaking with the Targeted Victims, Defendant directed them to a fraudulent webpage made to look like the Cryptocurrency Exchange's platform, which helped persuade the Targeted Victims to provide Defendant the two-factor authentication information associated with their accounts.

    g.  Using account information the conspirators had obtained, including the two-factor authentication information Defendant had obtained from the Targeted Victims, Light then accessed the Targeted Victims' Cryptocurrency Exchange accounts and transferred the cryptocurrency in those accounts to cryptocurrency wallets under Light's control. Over the course of the conspiracy, the conspirators stole at least 189.4989793 Bitcoin (BTC) (valued at least as high as $10,283.493.59 in or around April 2021) from Targeted Victims' Cryptocurrency Exchange accounts through these fraudulent transfers.

  h. Light thereafter split the stolen proceeds amongst himself, Defendant, and the other conspirators, sending stolen cryptocurrency to each of their private wallets.

### Acts in Furtherance of the Conspiracy and Scheme

11. In furtherance of the conspiracy and scheme, and to accomplish the objects and purposes and conceal the existence thereof, a member of the conspiracy committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

I. *Victim 1*

12. In or around April 2021, the conspirators obtained Victim 1's PII through their hack of Company 1's web application.

13. On or about April 7, 2021, Defendant, in Florida, used a VOIP phone number to call Victim 1, in the Northern District of Ohio, while altering the caller ID information to appear to be calling from the Cryptocurrency Exchange. Defendant identified himself to Victim 1 as a Cryptocurrency Exchange employee named "Danny" and told Victim 1 that he wanted to help Victim 1 resolve a transaction error from several weeks prior. As a result of Defendant's representations, Victim 1 logged into his computer, his email, and his Cryptocurrency Exchange account while on the phone with Defendant.

14. Defendant used information Victim 1 provided while on the phone to change settings for Victim 1's Cryptocurrency Exchange account, including to change the two-factor authentication settings, authorize a new device associated with Victim 1's account, and change Victim 1's password.

15. Using illicit access to Victim 1's email account, Defendant also deleted incoming alerts from Cryptocurrency Exchange 1 in Victim 1's email, preventing Victim 1 from discovering that his email and Cryptocurrency Exchange accounts had been compromised.

16. From on or about April 7, 2021, through on or about April 8, 2021, after obtaining access to Victim 1's Cryptocurrency Exchange account and concealing their access to and control of that account, Defendant, Light, and their co-conspirators transferred approximately 10.75667325 Bitcoin (BTC) from Victim 1's Cryptocurrency Exchange account to accounts and cryptocurrency wallets the conspirators controlled.

II. *Victim 2*

17. In or around April 2021, the conspirators obtained Victim 2's PII through their hack of Company 1's web application.

18. On or about April 7, 2021, Defendant used a VOIP phone number to call Victim 2, in the Southern District of California, while altering the caller ID information to appear to be calling from Cryptocurrency Exchange 1. Defendant identified himself as a Cryptocurrency Exchange 1 employee named "Danny." To lull Victim 2 into believing that Defendant was an actual Cryptocurrency Exchange 1 employee and that the call was legitimate, Defendant used his access to Victim 2's compromised email account to purportedly "verify" recent prior transactions Victim 2 had made with his Cryptocurrency Exchange account. Defendant convinced Victim 2 to access Victim 2's two-factor authentication information while on the phone with Defendant, convincing Victim 2 to share Victim 2's Google authentication using screen-sharing software.

19. Defendant immediately provided Victim 2's information to Light via a separate communications application, enabling Light to access Victim 2's Cryptocurrency Exchange account.

20. Light began transferring Bitcoin out of Victim 2's Cryptocurrency Exchange account, which caused Victim 2 to notice that Bitcoin was being sent out of his Cryptocurrency Exchange account while still on the phone with Defendant.

21. When Victim 2 notified Defendant, who was still purporting to be a Cryptocurrency Exchange 1 representative, Defendant hung up on Victim 2 and terminated the call.

22. On or about April 7, 2021, after obtaining access to Victim 2's Cryptocurrency Exchange account and concealing their access to and control of that account, Defendant, Light, and the other conspirators transferred approximately 109.68080704 BTC from Victim 2's Cryptocurrency Exchange account to accounts and cryptocurrency wallets the conspirators controlled.

All in violation of Title 18, United States Code, Section 1349.

DAVID M. TOEPFER
United States Attorney

By: *Elliot Morrison* (signature)
Elliot Morrison, Chief
White Collar Crimes Unit